## King License

*Charles W. Eaby, Jr.*, for petitioner.

BOWMAN, P. J., February 28, 1957. — John D. King, a minor, seeks the appointment of a guardian in order that the guardian may consent to his proposed marriage to Annetta L. Kover.

Upon the presentation of his petition, a citation was issued directed to his parents, David K. King and Sarah P. King, to show cause why a guardian should not be appointed. No answers were filed by them. At the hearing on the citation the parents did not appear personally or by counsel.

The Marriage Law of August 22, 1953, P. L. 1344, sec. 5, provides as follows:

"No license to marry shall be issued by any clerk of the orphans' court:

". . . (c) If either of the applicants is under the age of twenty-one years, unless the consent of a parent

or guardian of said applicant shall be personally given before the clerk, or be certified under the hand of a parent or guardian, . . .''

From the testimony we find that John and Annetta are both 19 years of age. John was born March 3, 1937; Annetta on July 30, 1937. Annetta's parents assert their willingness to consent to the marriage. John's parents, according to his testimony, will not consent.

The testimony reveals a not infrequent episode of family life, an assertion of independence on the part of youth and a desire of the parents to maintain the way of life to which they are accustomed and to which they subscribe. John's parents are of the Amish faith, members of the order known as "House Amish". They live on and operate a farm of approximately 75 acres, situate near Gordonville, Lancaster County. John is the oldest of 12 children. Until or about December 1955 (when he was 18 years of age) he was a member of the church of his parents. No longer desiring to subscribe to the tenets of the religion of his parents and their way of life, he purchased an automobile, adopted a hair style and manner of dress unlike that of the Amish custom. As a result, according to his testimony, he was informed by his parents that "they didn't want to have anything to do with me if I didn't follow up their religion". He thereupon left the family home and was later informed that he was dismissed from the church to which he once adhered. In March of 1956, he met Annetta, to whom he is now engaged. In June of that year, John became a member of the church of his fiancee, the Church of the Brethren. He is gainfully employed by the Trojan Boat Company and has an average weekly net income of $60. Presently, he is living in the home of Frank Nauman, at R. D. No. 2, Manheim, Lancaster County, whom he

desires as his guardian. The proposed guardian expressed his willingness to consent to the marriage.

Such is the testimony. The couple have expressed their love for each other and their desire to marry. There is lacking only the consent of John's parents, who, according to his testimony, stated "they will sign my license when I marry a girl in the church", meaning, as he explained, a girl of their faith.

The basic question before us is whether the court should override the restraining hands of the parents in the circumstances here present. This young couple's problem is no different from that of countless other American youths who, but for the lack of parental consent, would early in life walk precipitously into the marriage chamber. See in re Barbara Haven, etc., 86 D. & C. 141, 143. The wisdom of the legislature in prescribing 21 years as the age when a marriage license may issue without parental consent is not to be questioned. In Moorehead's Estate, 289 Pa. 542, 552, it is stated: " '. . . marriage is a social institution, publici juris, being the foundation of the family and the origin of domestic relations of the utmost importance to civilization and social progress; hence the State is deeply concerned . . .' ".

In Gilbert Marriage License, 6 D. & C. 2d 414, President Judge Williams stated, at page 416: "We are of the opinion that the Act of August 24, 1953, supra, was written with the intention that consents of parents are necessary in the marriage of minors. We are of the opinion it was intended that guardians should be appointed only when parents are deceased or have deserted their children". In line with this decision it may be contended that John was constructively deserted by his parents, or, as counsel for petitioner intimated, his emancipation was effected which would justify the appointment of a guardian for the purpose stated. Regardless of such contention we are of the

opinion that, no special or impelling circumstance having been shown other than the desire of petitioner and his fiancee to marry, we should not supplant the rights of the parents here involved. Whatever the motives of the parents may be or however incompatible with the views of the son, it is not for the court to question them under the facts and circumstances here present.

And now, February 28, 1957, for the foregoing reasons the prayer of the petition is refused and the petition is dismissed.